UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RANDOLPH A.,

        Plaintiff,

    v.           **DECISION AND ORDER**

            19-CV-1342S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

    1.    Plaintiff Randolph A.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for disability insurance benefits under Title II of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

    2.    Plaintiff protectively filed his application with the Social Security Administration on April 26, 2016.  Plaintiff alleged disability beginning January 25, 2016, due to lumbar degenerative disc disease with radiculopathy, diabetes with diabetic polyneuropathy, schizoaffective disorder, bipolar type.  Plaintiff's application was denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

    3.    On August 16, 2016, ALJ Maria Herrero-Jaarsma held a video hearing at which Plaintiff—represented by counsel—and Vocational Expert Eric Dennison appeared and testified.  (R.[2] at 44-85.)  At the time of the hearing, Plaintiff was 33 years old with a

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

high school education (R. at 35).  He has past work experience as technical support specialist, service desk analyst (light exertion work, performed at sedentary level), technical support specialist, system support specialist (light performed at medium), and computer programmer (sedentary performed at medium) (R. at 35).  The ALJ found that Plaintiff was unable to perform this past relevant work (R. at 35).

4.     The ALJ considered the case *de novo* and, on September 11, 2018, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5.     Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 11, 15.)  Plaintiff filed a response on August 5, 2020 (Docket No. 16), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion (Docket No. 11) is granted, and Defendant's motion (Docket No. 15) is denied.

6.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.

---

[3]The ALJ's September 11, 2018, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

Perales, 402 U.S. 389, 401, 91 S.Ct. 389, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.  The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

4

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 25, 2016. (R. at 25.) At step two, the ALJ found that Plaintiff has the following severe impairment: lumbar degenerative disc disease with radiculopathy, diabetes with diabetic polyneuropathy, schizoaffective disorder, bipolar type (R. at 25). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with certain limitations. The ALJ found that

> Plaintiff can stand or walk for 4 hours, and sit for 6 hours per eight-hour workday; can alternate between sitting and standing once every 30 minutes for 5 minutes without increasing time off task; occasional pushing and pulling; occasional climbing of ramps and stairs; occasional balancing on level surfaces; occasional stooping (i.e., bending at the waist) and kneeling but never crouching (i.e., bending at the knees) and crawling; frequent but not constant bilateral reaching including overhead, in front, and or laterally, handling, fingering, and feeling; can never tolerate exposure to unprotected heights, moving machinery, and moving mechanical parts; should avoid exposure to extreme cold and to extreme heat. Plaintiff also can understand, carry out, and remember simple, routine, and repetitive tasks defined as work that require doing the same task everyday with little variation in location, hours or task. Plaintiff can work in a low stress environment (defined as one with no supervisory responsibilities; no independent decision-making required except with respect to simple, routine, repetitive decisions; and with few, if any, work place changes in work routines, processes or settings); work that would not require a high level of attention to detail; work that does not require travel to unfamiliar places; work that involves occasional contact and interaction with supervisors, co-workers, and the public; can be around co-workers throughout the day, but no tandem job tasks requiring cooperation with co-workers.

(R. at 27-28.)

13.     At step four, the ALJ found Plaintiff is unable to perform any past relevant work. (R. at 35.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 36.) Given that Plaintiff could not perform all or substantially all the requirements for light work, the ALJ asked for the opinion of the vocational expert. The expert opined that a hypothetical claimant like Plaintiff with his education, work skills and experience can perform such jobs as a marker, checker, or garment sorter (all light exertion work) (R. at 36). Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 36, 37.)

14.     Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ's assessment and mental RFC limitations were not substantially supported by the evidence (Docket No. 11, Pl. Memo. at 18-25). Plaintiff next contends that the physical RFC was based on the ALJ's lay opinion (id. at 25-29). For the reasons that follow, this argument on Plaintiff's mental limitations is accepted and his motion for judgment is granted.

15.     Plaintiff first contends that the ALJ gave partial or little weight to medical opinions of record for Plaintiff's mental health impairments and erroneously stated that there was little support in the objective evidence for disabling symptoms (Docket No. 11, Pl. Memo. at 19, citing R. at 29, 34). Plaintiff contends that the ALJ's clinical record omits references after 2016 (save a single therapy note in June 2018) and Plaintiff's continuing treatment from then (Docket No. 11, Pl. Memo. at 19). Defendant, however, noted treatment from February 2016 (Docket No. 15, Def. Memo. at 14-15, citing, e.g., Dr. Brian Joseph's record, Feb. 22, 2016, R. at 612, 614).

16. Viewing the objective evidence, the ALJ found that the medical record gave little support for disabling symptoms (R. at 29). She notes that while Plaintiff was diagnosed with bipolar disorder and later schizoaffective disorder, he has no recorded counseling but seeing Dr. Ghosh[4] for psychotropic medication (R. at 29, 601). The ALJ gave the consultative examiners' opinions partial weight because they were only one-time examinations performed two years before the decision and without a longitudinal history with Plaintiff (R. at 34). The ALJ gave treating sources little weight because they were applying disability standards for workers' compensation and those standards differ from Social Security (R. at 34). On the mental opinion evidence, the ALJ found that the opinions of the consultative examiner and state agency medical consultants were understated and not consistent with Plaintiff's testimony (R. at 34, 152, 603, 699, 708). The ALJ gave partial weight to Dr. John Napoli, Plaintiff's psychiatrist, because they were inconsistent because he concluded Plaintiff could not work but did not list any current restrictions or limitations on work activities (R. at 34, 695).

17. Plaintiff argues that he had abundant clinical evidence and did not demonstrate significant improvement (Docket No. 11, Pl. Memo. at 19, 21, citing record). Plaintiff had several inpatient hospitalizations for psychotic and depressive symptoms (id. at 21; R. at 648-54, 754-60, 756, 717-34, 736-53).

18. The ALJ found that Plaintiff could understand, carry out, and remember simple, routine, and repetitive tasks; could work in a low-stress environment; and work with occasional contact and interaction with co-workers, supervisors, and the public (R. at 27, 28; see Docket No. 15, Def. Memo. at 13, 14). Defendant argues that these findings

---

[4]Probably consultative examiner Dr. Susan Santarpia meant Dr. Eugene Gosy, see R. at 149, 404.

7

are based upon the opinion of consultative examiner Dr. Susan Santarpia (Docket No. 15, Def. Memo. at 13, 14; R. at 699) and formulated the RFC upon the entire record rather than merely relying upon the consultative examiners (Docket No. 15, Def. Memo. at 17). Defendant notes that the ALJ factored in limits on social interaction, concentration, persistence, and pace based on Plaintiff's testimony in rendering the RFC (id.).

19. Plaintiff replies that the ALJ gave only partial weight to the opinions of consultative examiners Drs. Santarpia and Marks and rendered his findings despite not considering clinical findings after 2016 (Docket No. 16, Pl. Reply Memo. at 1; R. at 26). He argues that Defendant provides a post hoc rationalization of the post-2016 medical record that the ALJ did not expressly state she considered (Docket No. 16, Pl. Reply Memo. at 2).

20. The ALJ's analysis was based on the consultative examinations and stopped in 2016. Although these evaluations occurred during Plaintiff's psychiatric hospitalizations. Plaintiff was hospitalized in 2015 (R. at 616), January 2016 (R. at 617), March 2016 (R. at 710), and April 2016 (R. at 717).

21. Plaintiff underwent a "Fitness to Return to Duty" examination in February 2016. Dr. Brian Joseph concluded that Plaintiff still suffered the effects of his illness while he was no longer manic, he was in a depressive phase which compromised his ability to concentrate and follow through. (R. at 614, 29.) Dr. Joseph opined that once Plaintiff's situation stabilized, he could return to work with the County of Erie (R. at 614; Docket No. 15, Def. Memo. at 14). The ALJ gave only little weight to Dr. Joseph's opinion because his evaluation was for workers' compensation standards (R. at 34).

22. In June 2016, treating psychiatrist Dr. John Napoli evaluated Plaintiff and found that he was able to return to work as of January 1, 2017 (R. at 695; Docket No. 15, Def. Memo. at 15). Dr. Napoli opined the Plaintiff was not able to work at that time (R. at 695, 30). The ALJ gave partial weight to Dr. Napoli because it was consistent with Plaintiff's medical record but is inconsistent because the doctor states Plaintiff was unable to work but did not list current restrictions or limitations (R. at 34).

23. Plaintiff underwent consultative examinations by Drs. Santarpia (R. at 698, 30) and Marks (R. at 157, 30-31) in June 2016, concluding that Plaintiff had intact attention and concentration (R. at 698, 157, 30; Docket No. 15, Def. Memo. at 15). The ALJ gave these opinions partial weight (R. at 34).

24. In all of this, what is missing is the ALJ's assessment of Plaintiff from the middle of 2016 forward. Defendant points to a 2018 notation in the record (R. at 887, Dr. Loida Reyes; Docket No. 15, Def. Memo. at 14-15, 9). The ALJ, however, has not cited to medical record for this period (R. at 882-1157, see also R. at 762-807, 809-38, 840-80, (Exs. B25F, B26F, B27F), even though the ALJ cites to Dr. Reyes' June 25, 2018, therapy notes on Plaintiff's compliance with taking psychiatric medication (R. at 28, 1129) and to Plaintiff's physical treatments during that period (R. at 33). The ALJ gave little weight to medical opinions from this period as to determined levels of impairment and Plaintiff's capabilities because these were workers' compensation evaluations (R. at 34, critiquing Exs. B25F and B27F). Thus, there is not substantial evidence for the ALJ's findings of Plaintiff's mental impairment from the middle of 2016.

25. Plaintiff's Motion for Judgment (Docket No. 11) as to his mental impairments is granted.

26. Plaintiff next contends that the physical RFC assessment was based upon the ALJ's lay speculation (Docket No. 11, Pl. Memo. at 25-29; Docket No. 16, Pl. Reply Memo. at 5-6). Plaintiff argues that the ALJ ultimately relied upon an early medical opinion that the ALJ gave only partial weight (Docket No. 11, Pl. Memo. at 26).

27. Defendant retorts that the record provided more sources than Dr. David Brauer to support the physical RFC for light work (Docket No. 15, Def. Memo. at 17-18).

28. The ALJ acknowledged the consultative examinations by Drs. John Schwab and Brauer from February 2015 and June 2016 but discounted their opinions because they were based on one-time examinations (R. at 31, 32, 34, 638-45, 701-06).

29. Plaintiff's alleged onset date is January 26, 2016, after Dr. Schwab's examination. Dr. Brauer's opinion (R. at 32) was rendered without Plaintiff's subsequent two years of medical records (see Docket No. 11, Pl. Memo. at 26). Plaintiff concludes that the ALJ lacked other opinions to support her findings (id. at 26-27).

30. Defendant justifies the ALJ's finding because it was supported by the reports of Plaintiff's mother of his limitations (R. at 331; Docket No. 15, Def. Memo. at 17) and Plaintiff's testimony (R. at 55-56, 27, see id. R. at 33-34).

31. The ALJ evaluated the consultative examiner's evaluations based upon the medical record but gave later medical opinions less weight because they originally were for workers' compensation and lacked functional limitations. The ALJ recounts Plaintiff's treatment record (R. at 31-33).

32. What the ALJ has not provided is the evidentiary basis for her detailed physical RFC (cf. R. at 27-28). It is unclear that the medical record supports the detailed physical RFC found by the ALJ.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15) is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      February 23, 2020
            Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge